UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CONNIE ANN CHARBONEAU,

        Plaintiff                            Civil Action No. 10-13868

v.                                    HON. SEAN F. COX
                                         U.S. District Judge
                                       HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

        Defendant.
_____/


## REPORT AND RECOMMENDATION

Plaintiff Connie Ann Charboneau brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on March 17, 2004, alleging disability as of September 19, 2003 (Tr. 45).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on March 16, 2007 in Flint,

Michigan before Administrative Law Judge ("ALJ") Edward Steinman (Tr. 606). Plaintiff, represented by attorney Mikel Lupisella, testified (Tr. 609-629), as did Vocational Expert ("VE") Nelly Katsell (Tr. 629-633). On April 24, 2007, ALJ Steinman found that Plaintiff was not disabled (Tr. 28). On July 26, 2010, the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review of the final decision on September 28, 2010.

## BACKGROUND FACTS

Plaintiff, born October 29, 1962 was 44 when the ALJ issued his decision (Tr. 28, 45). She completed high school and worked previously as a car seat builder (Tr. 72, 77). She alleges disability as a result of Carpel Tunnel Syndrome ("CTS"), asthma, hypertension, and neck, back, and elbow pain (Tr. 71).

### A.    Plaintiff's Testimony

Plaintiff testified that she previously worked as an assembly line seat builder until experiencing disability on September 19, 2003 (Tr. 609). Plaintiff alleged that she experienced manipulative limitations as a result of bilateral CTS, but denied undergoing surgery on either hand (Tr. 609). Plaintiff reported that at one point, she had been taking Topamax, but stated that she had not taken medication for either hand or shoulder pain since undergoing shoulder surgery in June, 2006 (Tr. 611). She reported that she continued to experience trouble gripping and reaching, adding that she was unable to write for more than 20 minutes at a time due to numbness and cramping (Tr. 612-613). She estimated that she experienced up to level "10" wrist pain on a scale of 1 to 10 when trying to lift or carry with one hand (Tr. 613-614). Plaintiff stated that she regularly experienced level "6" right

shoulder pain and up to level "10" neck and back pain (Tr. 614-616). In addition to the above conditions, Plaintiff alleged that prolonged standing, squatting, and bending caused knee and foot pain (Tr. 616). She denied taking pain medications (Tr. 617).    Plaintiff testified that she used a Proventil inhaler several times a week for asthma and took Albuterol in a pill form daily, but admitted that she had not seen a physician for the condition for the past few months (Tr. 618-619). She testified that she currently took Glucophage for diabetes, Esophax for her stomach, and Vytorin and Coreg for her heart condition (Tr. 620-621). Plaintiff alleged that she was unable to lift more than ten pounds, stand for more than two hours, or sit for more than four hours (Tr. 621-622). She reported that she spent her days listening to the radio and photographing deer wandering into her backyard (Tr. 623-626). She admitted that she drove approximately four times a week and performed light household chores (Tr. 626-627). In response to questioning by her attorney, Plaintiff opined that concentrational problems as a result of pain prevented her from performing any work, adding that she was unable to receive hand and wrist treatment due to financial problems (Tr. 628-629).

### B.    Medical Evidence

### 1. Treating Sources

In March, 1992, Plaintiff first reported hand and shoulder numbness (Tr. 291). She was placed on temporarily restricted work duty (Tr. 291). May, 1994 treating records indicate that Plaintiff was prescribed a right wrist splint for CTS (Tr. 243). In May, 1996, Plaintiff reported a left shoulder injury (Tr. 285). In February, 1998 she was again prescribed a right wrist splint (Tr. 277).

In September, 2002, Plaintiff was placed on restricted work duty because of neck and shoulder pain (Tr. 442). The following month, Gary King, M.D. noted that Plaintiff's range of back motion was normal (Tr. 435). She was advised to continue taking Motrin (Tr. 435). In November, 2002, imaging studies of the chest showed "no evidence of acute cardiopulmonary disease" (Tr. 428). A February, 2003 MRI of the lumbar spine showed disc desiccation at L4-L5 and L5-L1 and a mild bulging disc at L4-L5 (Tr. 361). A May, 2003 heart catheterization showed the absence of coronary artery disease (Tr. 333, 403). In June, 2003, Richard J. Kovan, M.D. examined Plaintiff, noting complaints of neck, low back, and right shoulder pain (Tr. 294). Plaintiff denied extremity pain, reporting that she was currently on restricted work duty as an inspector (Tr. 294). Her work restrictions included no overhead reaching and only limited bending and stooping (Tr. 294). She reported that she was independent in self-care and most household activities, but required help with heavier chores (Tr. 294). Dr. Kovan recommended physical therapy, opining that Plaintiff "should be able to return . . . to work without restrictions" (Tr. 295).

On September 23, 2003, Plaintiff requested a work excuse through October 13, 2003 (Tr. 391, 393). Treating notes state that she appeared in no acute distress (Tr. 393). The following month, treating notes by Dr. King state that Plaintiff went "out of town" to obtain a work excuse until January 1, 2004 (Tr. 386). The same month, imaging studies found the presence of CTS on the right, bilateral cubital tunnel syndrome, and L5-S1 radiculopathy (Tr. 357-358). Neurologist Jeffrey Levin stated that Plaintiff should remain off work until January 1, 2004, later extending the work excuse to April 1, 2004 (Tr. 355, 360). In January,

-4-

2004, Jerome V. Ciullo, M.D. recommended that Plaintiff undergo arthroscopic surgery in both shoulders (Tr. 584). He deemed Plaintiff's prognosis "good" (Tr. 585). A March, 2004 MRI of the thoracic spine was normal (Tr. 350). In April, 2004, Dr. King was unable to confirm a diagnosis of fibromyalgia (Tr. 385).

In May, 2004, James E. Dowd, M.D. diagnosed Plaintiff with fibromyalgia (Tr. 296). She was also advised to increase exposure to bright lights in the morning and perform low impact aerobic exercise (Tr. 296). In August, 2004, Plaintiff underwent left shoulder arthrocopic surgery without complications (Tr. 555-557, 559). In November, 2004, Dr. Ciullo released Plaintiff for restricted work (Tr. 540). December, 2004 physical therapy discharge notes state that Plaintiff's left shoulder mobility had "progressed well" (Tr. 324). Dr. Ciullo opined that Plaintiff should lose weight before proceeding with right shoulder surgery (Tr. 536). Her physical therapist recommended a "work hardening program to transition her return to work related activities" (Tr. 324).

March, 2005 imaging of the lumbar spine was unremarkable (Tr. 346). The following month, an EMG confirmed the presence of CTS on both sides, with the right more severe than the left (Tr. 345). A July, 2005 echocardiogram found "mild to moderate" mitral regurgitation and mild left ventricular dysfunction but otherwise normal results (Tr. 329). In November, 2005, Dr. Levin noted the presence of bilateral rotator cuff pathology (Tr. 339). On March 14, 2007, Dr. Levin completed a medical source statement on behalf of Plaintiff's claim for DIB, finding that Plaintiff was unable to lift more than ten pounds, walk or stand for two hours in an eight-hour workday and sit for six (Tr. 602). He found that

Plaintiff's ability to push/pull in the upper and lower extremities was severely limited and that she should be precluded from all overhead reaching and work with vibrational tools (Tr. 602). He found further that Plaintiff was limited to occasional gripping, grasping, handling, and feeling (Tr. 602).

### 2. Consultive and Non-Treating Sources

A June, 2004 non-examining Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 20 pounds occasionally and 10 frequently; stand, sit, or walk for six hours in an eight-hour workday; and push and pull without limitation in the lower extremities (Tr. 298). Her postural limitations consisted of frequent (as opposed to *constant*) balancing; occasional climbing of stairs, stooping, kneeling, crouching and crawling; and a preclusion on the climbing of ladders, ropes, and scaffolds (Tr. 299). She was limited to frequent handling and fingering and occasional reaching and feeling (Tr. 300). The Assessment found the absence of visual or communicative limitations (Tr. 300). Environmental limitations consisted of avoiding concentrated exposure to vibrations and airborne hazards (Tr. 301). The Assessment concluded that Plaintiff was credible as to complaints of neck, shoulder, and wrist pain, but found allegations of limitation pertaining to asthma and chest pain only partially credible (Tr. 302). The same month, a Psychiatric Review Technique found that Plaintiff experienced only mild psychological deficiencies in activities of daily living, concentration, and social functioning (Tr. 306, 316).

### C. Vocational Expert Testimony

VE Nelly Katsell classified Plaintiff's former work as exertionally medium[1] (Tr. 631).

She found that Plaintiff's former work had no transferrable skills (Tr. 631).  The ALJ then

posed the following set of restrictions to the VE, asking the VE to make job findings for an

individual of Plaintiff's age, education, work history:

> lifting on occasion 20 pounds, frequently 10 pounds; sit, stand, and walk six out
> of eight; no ropes, ladders, or scaffolds; occasional postural except frequent
> balancing; occasional bilateral overhead reaching; frequent bilateral handling
> and fingering; occasional bilateral feeling; avoid concentrated exposure to
> extreme cold, vibration from power tools or . . . vibration; also no fumes, odors,
> etc.; avoid all exposure to hazards . . .

(Tr. 32).   Based on the above limitations, the VE found that the hypothetical individual

would be unable to perform Plaintiff's exertionally medium work but could do the jobs of

"investigative dealer accounts," (1,000 positions in the local economy); clerk/photo finisher

(1,200); and usher (1,000) (Tr. 632).  The VE found further that if Plaintiff were limited to

sedentary work with only occasional handling and fingering, all work would be precluded

(Tr. 632).  Likewise, the VE found that if Plaintiff's allegations of limitation were fully

credited, she would be unable to perform any work (Tr. 632-633).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe

---

[1]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like docket files, ledgers, and small
tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50
pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and
that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with
frequent lifting or carrying of objects weighing up to 50 pounds.

impairments of CTS, fibromyalgia, diabetes mellitus, lumbar radiculopathy, cervical radiculopathy, and rotator cuff tear but that none of the conditions met or medically equaled the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 22-23).  The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following restrictions:

> [L]ift/carry twenty pounds occasionally, ten pounds frequently; sit/stand/walk six hours in an eight-hour workday.  She has postural limitations precluding climbing ropes, ladders and scaffolds, and occasional limitations climbing ramps, stairs, balancing, stooping, kneeling, crouching, and crawling; manipulative limitations of occasional bilateral overhead reaching, frequent bilateral handling and fingering, and occasional bilateral feeling.  She is to avoid concentrated exposure to extreme cold, vibration from tools or other vibration, fumes, odors, etc, and all exposure to hazards

(Tr. 23).  Consistent with the VE's testimony, the ALJ concluded that Plaintiff was unable to return to her past relevant work as a car seat builder but could perform the exertionally light jobs of investigative dealer accounts, counter clerk photo finish, and usher (Tr. 28).

The ALJ discounted Plaintiff's allegations of disability, noting that despite her claim of disability level pain, she refrained from taking any pain medication or the use of wrist splints (Tr. 26).  He also observed that Plaintiff took photographs, drove, visited family members, and performed household chores on a regular basis (Tr. 26).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more

than a scintilla but less that a preponderance.   It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*   800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).


## ANALYSIS

### The Treating Physician Analysis

Plaintiff argues that the ALJ erred by rejecting portions of Dr. Levin's March, 2007

medical source statement.  *Plaintiff's Brief* at 6-13 (citing Tr. 602).  On a related note,

Plaintiff contends that Dr. Levin's assessment of her limitations was improperly excluded

from the hypothetical question, thus invalidating the VE's job findings.  *Id.* (citing *Varley*

*v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987)).

### A.  Basic Principles

"If uncontradicted, the [treating] physicians' opinions are entitled to complete

deference." *Jones v. Secretary of Health and Human Services,* 945 F.2d 1365, 1370 (fn 7)

(6th Cir.1991). "[I]f the opinion of the claimant's treating physician is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent

with the other substantial evidence in [the] case record, it must be given controlling weight."

*Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009)(citing *Wilson v. Commissioner of Social*

*Sec.*, 378 F.3d 541, 544 (6th Cir.2004)(internal quotation marks omitted)).  Further, "[i]f the

opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." *Wilson,* at 544; 20 C.F.R. 1527(d)(2). Regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion. *Wilson* at 544 (citing *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999))

The mere fact that a treating physician's opinion is contradicted by another source is not a sufficient basis for its rejection. *Hensley* at 266 ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion.").  However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391-392 (6th Cir.2004).

### B.  Application to Present Case

Contrary to Plaintiff's position, the analysis of Dr. Levin's March, 2007 medical source statement was  well explained and well supported by the record.  The ALJ noted that the treating neurologist's source statement was "not supported by the totality of the medical evidence of record, as well as his own progress notes" (Tr. 26).  Indeed, aside from the

medical source statement (completed just before the administrative hearing) none of the treating records suggests that Plaintiff's limitations precluded all work.

The administrative opinion properly acknowledges Dr. Levin's status as a treating neurologist, but nonetheless discounts his opinion as to Plaintiff's residual abilities on the basis that he had treated Plaintiff only "a limited number of times" (Tr. 26). The ALJ noted that although Dr. Levin prescribed wrists splints, Plaintiff had not used them since 2005 (Tr. 25-26). The ALJ also observed that Dr. Levin's opinion stood at odds with the fact that Plaintiff did not take even over-the-counter pain relievers for the condition (Tr. 26). He cited Plaintiff's testimony that she continued to photograph on an almost daily basis and use a computer (Tr. 24). Finally, the ALJ noted that Plaintiff continued to perform light housework, drive four times a week, and perform self care activities (Tr. 26-27).

For the same reasons, Plaintiff's argument that ALJ erred by failing to incorporate all of Dr. Levin's findings into the hypothetical question is unavailing. First, having adequately explained his reasons for discounting Dr. Levin's opinion, he was under no obligation to include the rejected limitations in the hypothetical question. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987))("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Second, the ALJ did not omit reference to the diagnoses of CTS and shoulder problems, but instead, acknowledged upper extremity impairments by limiting overhead reaching, handling, and fingering, and limited exposure to temperature extremes, vibrating tools, and hazardous

-12-

fumes (Tr. 32).   Because the treating physician analysis and choice of hypothetical limitations were well supported by the record, the ALJ's determination do not provide grounds for remand.

In closing, I note that the record shows that Plaintiff experienced some level of impairment.   Thus, my recommendation to uphold the administrative determination should not be read to trivialize those limitations.   However, the ALJ's findings were well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and accordingly, should not be disturbed by this Court. *Mullen v. Bowen*, *supra.*

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).   Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  September 29, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 29, 2011.

s/Susan Jefferson
Deputy Clerk

-14-